IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN
DISTRICT OF ILLINOIS, WESTERN DIVISION

BANK OF NEW YORK, CWABS 2000-2 )
                                   )   **FILED-WD**
                    PLAINTIFF )NO. 01 C 50017
                                   )
             VS                    )JUDGE  CLERK
                                   )U.S. DISTRICT COURT
COLLEEN BROWN AKA COLLEEN S. BROWN; )
UNKNOWN TENANTS; )

COMPLAINT TO FORECLOSE MORTGAGE

      NOW COMES the Plaintiff, by and through its Attorneys, PIERCE &
ASSOCIATES, complaining of the defendants herein, and states that the
Plaintiff herein is authorized to do business in the State of
Illinois and further States as follows:

1.     Jurisdiction of this court is based upon diversity of
       citizenship. Plaintiff is a corporation incorporated under the
       laws of the State of _CALIFORNIA_, having its
       principal place of business in the State of
       _CALIFORNIA_. Defendant mortgagors are citizens of the
       State of Illinois or as otherwise stated in caption. The
       matters in controversy, exclusive of interest and costs,
       exceeds the sum of $75,000.00. All conditions precedent have
       been fulfilled or met by the Plaintiff prior to the filing of
       this cause.

2.     Plaintiff files this Complaint to Foreclose the mortgage, trust
       deed or other conveyance in the nature of a mortgage
       (hereinafter called "Mortgage") hereinafter described, pursuant
       to 735 ILCS 5/15-1101 et. seq. of the Illinois Code of Civil
       Procedure, and joins persons named in the caption as
       "Defendants", as parties hereto.

3.     Attached as "EXHIBIT A" is a true copy of the Mortgage.
       Attached as "EXHIBIT B" is a true copy of the Note secured
       thereby.

4.     Information concerning said Mortgage:

       (a)   Nature of the instrument: Mortgage.

       (b)   Date of the Mortgage: April 28, 2000

       (c)   Name of the mortgagors or grantors:

         COLLEEN BROWN AKA COLLEEN S. BROWN;

       (d)   Name of the mortgagee, trustee or grantee in the Mortgage:

       FULL SPECTRUM LENDING, INC.

       (e)   Date of Recording or Registering: May 4, 2000

**DOCKETED**

JAN 18 2000

(f)     Place of Recording or Registering:

OFFICE OF THE RECORDER OF DEEDS OF DEKALB COUNTY

(g)     Identification of Recording: Document No. 00005491

(h)     Estate Conveyed: Fee Simple.

(i)     Amount of Original Indebtedness: $106,250.00

(j)     Plaintiff is the owner and of the Mortgage sought to be
        foreclosed herein by virtue of being the holder and owner
        of the note secured thereby.

(k)     Legal description of mortgaged premises:

LOT 8 IN BLOCK 7 IN EIGHTH ADDITION TO BRADT PARK, A
SUBDIVISION OF A PART OF SECTION 27, TOWNSHIP 40 NORTH,
RANGE 4, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO
THE PLAT THEREOF RECORDED JULY 25, 1963 AS DOCUMENT NO.
317272, IN PLAT BOOK "M", PAGE 57, IN DEKALB COUNTY,
ILLINOIS.

COMMONLY KNOWN AS:

        119 EAST MILNER AVENUE
        DEKALB, IL 60115

        TAX ID# 08-27-276-008

(l)     Statement as to amount now due:  After all payments
        received have been applied, Mortgagors are now due for
        the monthly installments of principal, taxes, interest,
        and insurance for September 2000 through the present; the
        balance due on the Note and the Mortgage is the total of
        the principal balance of $106,099.93, plus interest,
        costs and fees, and advances if any, made by the
        plaintiff.  The per diem interest rate is $28.34.

(m)     Name of present owners of said premises:

    COLLEEN BROWN AKA COLLEEN S. BROWN;

(n)     Names of persons in addition to said owners, but
        excluding any non-record claimants as defined in the
        Illinois Mortgage and Foreclosure Act as heretofore and
        hereafter amended, who are joined as Defendants and whose
        interest in or lien on the mortgaged real estate is
        sought to be terminated:

        UNKNOWN TENANTS , by virtue of the fact that
        he/she/they is/are tenant(s) o r person(s) in
        possession of the subject real estate and may have

some interest therein the exact nature and extent of this Defendant's interest is unknown to Plaintiff;

(o)  Names of persons claimed to be personally liable for deficiency:

COLLEEN BROWN AKA COLLEEN S. BROWN;

(p)  Capacity in which Plaintiff brings this suit:  Plaintiff is the legal holder of the indebtedness and owner of the Mortgage given as security therefor.

(q)  Plaintiff seeks to include in the Judgment the Plaintiff's attorneys' fees and costs and expenses.

5.  That should a deficiency result from the foreclosure sale of the subject property, Plaintiff may seek an In Personam or an In Rem deficiency judgment, unless the defendant(s) which are liable on the subject mortgage note have had personal liability on said note discharged in a Bankruptcy proceeding or if said liability has been otherwise discharged or released.

6.  That should the subject property be vacant, the Plaintiff may seek to have the Court find that the property is abandoned pursuant to 735 ILCS 5/15-1603, Illinois Code of Civil Procedure.

7.  That the Plaintiff may seek to have the Court appoint the Mortgagee in Possession or for appointment of a receiver.

WHEREFORE, PLAINTIFF PRAYS FOR:

1.  A Judgment of Foreclosure and Sale and Order granting Possession.

2.  A Judgment for attorney's fees, costs and expenses.

3.  An In Personam or an In Rem Deficiency Judgment, if sought, unless defendant(s) have had personal liability on the subject mortgage note discharged in a Bankruptcy proceeding, or otherwise released.

4.  An order granting a shortened redemption period, if sought.

5   Appointment of Mortgagee in Possession or Receiver, if sought.

6.  Such other and further relief as the Court deems just.

BANK OF NEW YORK, CWABS 2000-2

By: _____
PIERCE & ASSOCIATES
Its Attorneys

DENIS PIERCE
ARDC # 02205173

STATE OF ILLINOIS )
                    ) SS.
COUNTY OF COOK )

      The undersigned, being duly sworn, states that he is one of the Attorneys for Plaintiff in the above entitled cause and that he is duly authorized to execute this Affidavit in its behalf; that he has read the above and foregoing Complaint and to the best of the attorney's knowledge, information and belief formed after reasonable inquiry the complaint is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.

Subscribed and Sworn to before me
this January 10, 2001.

           NOTARY PUBLIC

PIERCE & ASSOCIATES
Attorneys for Plaintiff
Twelfth Floor
18 South Michigan Avenue
Chicago, Illinois 60603
TEL. (312) 346-9088
FAX (312) 346-1557
PA007741

"OFFICIAL SEAL"
RITA WHITEHOUSE
Notary Public, State of Illinois
My Commission Expires 4/30/02

## NOTICE IN COMPLIANCE WITH THE
## FAIR DEBT COLLECTION PRACTICES ACT (the Act)
## 15 U.S.C. SECTION 1601 AS AMENDED

1.    The amount of the debt is stated in paragraph 3(l) of the Complaint to Foreclose Mortgage attached hereto.

2.    The Plaintiff, as named in the attached Summons and Complaint, is the creditor to whom the debt is owed, or is the servicing agent for the creditor to whom the debt is owed.

3.    The debt described in the Complaint attached hereto, and evidenced by the copy of the Mortgage Note attached hereto, will be assumed to be valid by the creditor's law firm, unless the debtor, within thirty (30) days after the receipt of this notice, disputes, in writing, the validity of the debt or some portion thereof.

4.    If the debtor notifies the creditor's law firm in writing, within thirty (30) days of the receipt of this notice, that the debt, or any portion thereof, is disputed, the creditor's law firm will obtain a verification of the debt and a copy of the verification will be mailed to the debtor by the creditor's law firm.

5.    The name of the original creditor is set forth in the Mortgage and Note attached hereto.  If the creditor named as Plaintiff in the attached Summons and Complaint is not the original creditor, and if the debtor makes a written request to the creditors law firm within thirty (30) days from the receipt of this notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

6.    The Complaint to Foreclose Mortgage to which this Notice is attached is an attempt to collect a debt and any information obtained from you may be used for that purpose.

7.    Written requests should be addressed to Fair Debt Collection Clerk, Pierce & Associates, 18 South Michigan Avenue, Suite 1200, Chicago, Illinois 60603.

8.    This Notice is NOT a document which is authorized, issued or approved by any court, official or agency of the United States or any state, but is prepared by Pierce & Associates, attorneys at law, the law firm representing the creditor.

C:\MyFiles\FORMS\OFFICE\fair.debt.wpd

APR. 28. 2000  4:34PM    COUNTRYWIDE                                    NO. 0930    P. 19

FILED FOR RECORD
DEKALB COUNTY. IL.

00 MAY -4  PM 2: 36

*Sharon L. Holmes*
DEKALB COUNTY RECORDER

| WHEN RECORDED MAIL TO: | SPACE ABOVE FOR RECORDERS USE |
|---|---|
| MSN SV-79 / DOCUMENT CONTROL DEPT.<br>P.O. BOX 10266<br>VAN NUYS, CALIFORNIA 91410-0266<br>LOAN #: 1857563<br>ESCROW/CLOSING #: | Prepared by: M. ALDAMA<br>FULL SPECTRUM LENDING, INC.<br>1600 GOLF RD SUITE 300<br>ROLLING MEADOWS, IL 60008- |

# MORTGAGE

MIN 1000157-0000002637-3

THIS MORTGAGE ("Security Instrument") is given on April 28, 2000          . The mortgagor is
COLLEEN BROWN, A DIVORCED PERSON NOT SINCE REMARRIED

("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
FULL SPECTRUM LENDING, INC.
("Lender") is organized and existing under the laws of CALIFORNIA
4500 PARK GRANADA, CALABASAS, CA 91302-1613                              , and has an address of
Borrower owes Lender the principal sum of
ONE HUNDRED SIX THOUSAND TWO HUNDRED FIFTY and 00/100
Dollars (U.S. $   106,250.00   ). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
May 1, 2030          . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in XCOOKX DEKALB          County, Illinois:

ILLINOIS - Single Family - FNMA/FHLMC UNIFORM INSTRUMENT WITH MERS
6HN(IL)   (9802).01      CHL (11/99)          Page 1 of 7

Initials:
Form 3014 9/90
Amended 2/98

*23991*                              *00185756300000106HN*

APR. 28. 2000  4:34PM    COUNTRYWIDE                              NO. 0930   P. 20

LOT 8 IN BLOCK 7 IN EIGHTH ADDITION TO BRADT PARK, A SUBDIVISION OF A          LOAN #: 1857563
PART OF SECTION 27, TOWNSHIP 40 NORTH, RANGE 4, EAST OF THE THIRD
PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED JULY 25, 1963
AS DOCUMENT NO. 317272, IN PLAT BOOK " M", PAGE 57, IN DEKALB COUNTY,
ILLINOIS.

Parcel ID#:  PARCEL ID #: MILNER

which has the address of 119 MILLNER, DEKALB

Illinois  60115-         ("Property Address");                    [Street, City]

[Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or cancelling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    **1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.
    **2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. Section 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.
    The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.
    If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay

6HN(IL)   (9802).01      CHL (11/99)              Page 2 of 7                          Initials:
                                                                                      Form 3014 9/90

00005491

APR. 28. 2000  4:35PM    COUNTRYWIDE                                    NO. 0930    P. 21

LOAN #: 1857563

to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower's interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

00005491

APR. 28. 2000  4:36PM    COUNTRYWIDE                                    NO. 0930   P. 22

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender will accept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the taking, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Property immediately before the taking. Any balance shall be paid to Borrower. In the event of a partial taking of the Property in which the fair market value of the Property immediately before the taking is less than the amount of the sums secured immediately before the taking, unless Borrower and Lender otherwise agree in writing or unless applicable law otherwise provides, the proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

LOAN #: 1857563

6HN(IL)     (9802).01        CHL (11/99)              Page 4 of 7                    Initials: [signature]

Form 3014 9/90

00005491

APR. 28. 2000  4:37PM    COUNTRYWIDE                          NO. 0930   P. 23

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and     LOAN #: 1857563
that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan
exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the
permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower.
Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower.
If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it
by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any
other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address
stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument
shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction
in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with
applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect
without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is
sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without
Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security
Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this
Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less
than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security
Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted
by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement
of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may
specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b)
entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then
would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other
covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to,
reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security
Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall
continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain
fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under
paragraph 17.

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security
Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as
the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or
more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given
written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address
of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information
required by applicable law.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any
Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property
that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the
Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and
to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any
governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law

APR. 28. 2000  4:38PM    COUNTRYWIDE                                    NO. 0930   P. 24

of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any **LOAN #: 1857563**
removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all
necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by
Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic
pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in
this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to
health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of
any covenant or agreement in this Security Instrument (but not prior to acceleration under paragraph 17 unless applicable
law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not
less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to
cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security
Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the
right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or
any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in
the notice, Lender, at its option, may require immediate payment in full of all sums secured by this Security Instrument
without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to
collect all expenses incurred in pursuing the remedies provided in this paragraph 21, including, but not limited to,
reasonable attorneys' fees and costs of title evidence.

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument to
Borrower. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but
only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**23. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**24. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this
Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement
the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] 1-4 Family Rider |
| [ ] Graduated Payment Rider | [ ] Planned Unit Development Rider | [ ] Biweekly Payment Rider |
| [ ] Balloon Rider | [ ] Rate Improvement Rider | [ ] Second Home Rider |
| [ ] V.A. Rider | [ ] Other(s) [specify] | |

BHN(IL)    (9602).01    CHL (11/99)              Page 6 of 7                   Initials: _CB_
                                                                               Form 3014 9/90

APR. 28. 2000  4:38PM  COUNTRYWIDE                                   NO. 0930  P. 25

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.       **LOAN #: 1857563**

Witnesses:

*Colleen Brown* _____ (Seal)
COLLEEN   BROWN                                                    -Borrower

_____ (Seal)
                                                                  -Borrower

_____ (Seal)
                                                                  -Borrower

_____ (Seal)
                                                                  -Borrower

**STATE OF ILLINOIS,**                    DEKALB_____ County ss:

I, GREG C. ANDERSON_____, a Notary Public in and for said county and state do hereby certify that
CoLLEE BROWN

subscribed to the foregoing instrument, appeared before me this day in person, and acknowledged that SHE
signed and delivered the said instrument as HER free and voluntary act, for the uses and purposes therein set forth.
Given under my hand and official seal, this 28 th day of APRIL, 2000

My Commission Expires:

Notary Public

"OFFICIAL SEAL"
GREG C. ANDERSON
Notary Public, State of Illinois
My Commission Exp. 05/20/2003

6HN(IL)   (9802).01   CHL (11/99)                 Page 7 of 7                          Form 3014 9/90

00005491

APR. 28. 2000  4:33PM    COUNTRYWIDE                              NO. 0930   P. 15

# ADJUSTABLE RATE RIDER
## (LIBOR Index - Rate Caps)

| WHEN RECORDED MAIL TO: | SPACE ABOVE FOR RECORDERS USE |
|---|---|
| MSN SV-79 / DOCUMENT CONTROL DEPT.<br>P.O. BOX 10266<br>VAN NUYS, CALIFORNIA 91410-0266 | PARCEL ID #:<br>By: MARIA ALDAMA<br><br>FULL SPECTRUM LENDING, INC.<br>1600 GOLF RD SUITE 300<br>ROLLING MEADOWS, IL 60008- |
| LOAN #: <u>1857563</u> | |
| ESCROW/CLOSING #: | |

THIS ADJUSTABLE RATE RIDER is made this 28th day of April      , 2000, and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to
FULL SPECTRUM LENDING, INC.

**MULTISTATE ADJUSTABLE RATE RIDER - LIBOR INDEX -** Single Family
1U1931US (09/97)                              Page 1 of 4                      Initials: _____
CONV
BC - ARM Rider

*23991*                                    *0018575630000027815*

00005491

LOAN #: 1857563

(the "Lender") of the same date and covering the property described in the Security Instrument and located at:
119 MILNER, DEKALB IL, 60115.

[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:
**A. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

The Note provides for an initial interest rate of   9.750   %. The Note provides for changes in the interest rate and the monthly payments, as follows:
**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A) **Change Dates**

The interest rate I will pay may change on the first day of May        , 2002, and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

(B) **The Index**

Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) **Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding
SEVEN & ONE-QUARTER          percentage point(s) ( 7.250   %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

1U1932US (09/97)
CONV
BC - ARM Rider

Page 2 of 4

Initials: _CB_

LOAN #: 1857563

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11,250 % or less than 9.750 % . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s) ( 1,500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 16.750 % or less than 9.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 17 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

1U1933US (09/97)
CONV
BC - ARM Rider

Page 3 of 4

Initials:

APR. 28. 2000 4:34PM COUNTRYWIDE        NO. 0930 P. 18

LOAN #: 1857563

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
COLLEEN BROWN                                             -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

_____ (Seal)
                                                       -Borrower

1U1934US (09/97)
CONV
BC - ARM Rider                                Page 4 of 4

APR. 28. 2000  4:31PM    COUNTRYWIDE                          NO. 0930   P. 12

LOAN #: 1857563

## ADJUSTABLE RATE NOTE
### (LIBOR Index - Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

April 28. 2000                          DEKALB                          . Illinois
[Date]                                   [City]

119 MILNER, DEKALB, IL 60115.
MILNER                                   [Property Address]

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $    106,250.00    (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
FULL SPECTRUM LENDING, INC.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of  9.750  %. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

### 3. PAYMENTS

(A) Time and Place of Payments
I will pay principal and interest by making payments every month.
I will make my monthly payments on the first day of each month beginning on   June   , 2000. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on May 1, 2030    . I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at
4500 PARK GRANADA, CALABASAS, CA 91302-1613
or at a different place if required by the Note Holder.
(B) Amount of My Initial Monthly Payments
Each of my initial monthly payments will be in the amount of U.S. $  912.85  . This amount may change.
(C) Monthly Payment Changes
Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

### 4. INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The interest rate I will pay may change on the first day of May       , 2002 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal* . The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

ILLINOIS ADJUSTABLE RATE NOTE-LIBOR INDEX   · Single Family

CONV
BC · ARM Note
2D1371IL (05/97)                                    Page 1 of 5                              Initials: _CB_

*23991*                                        *001857563000002D137*



LOAN #: 1857563

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding SEVEN & ONE-QUARTER percentage point(s) ( 7.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 11.250 % or less than 9.750 %. Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than ONE & ONE-HALF percentage point(s) ( 1.500 %) from the rate of interest I have been paying for the preceding six months. My interest rate will never be greater than 16.750 % or less than 9.750 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note.

If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. My partial prepayment may reduce the amount of my monthly payments after the first Change Date following my partial prepayment.

☐ I may prepay this Note in full at any time without penalty.

☒ If this Note is secured by my principal residence and if I prepay this loan in full at any time during the first 24 months after the date I execute this Note, I will pay a prepayment penalty in the amount of six months' advance interest on the amount by which the prepayment exceeds twenty percent (20%) of the original principal balance.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

APR. 28. 2000  4:32PM    COUNTRYWIDE                    NO. 0930   P. 14

LOAN #: 1857563

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Colleen Brown_ 4/28/00 _____ (Seal)            _____ (Seal)
COLLEEN BROWN              -Borrower                                                -Borrower

_____ (Seal)            _____ (Seal)
                           -Borrower                                                -Borrower

*[Sign Original Only]*

CONV
9C - ARM Note
2D1373IL (05/97)                        Page 3 of 3

Prepared by: R. GENKINA

## ALLONGE TO NOTE

LOAN #   1857563

ALLONGE TO NOTE DATED   04/28/2000

IN FAVOR OF
FULL SPECTRUM LENDING, INC.

AND EXECUTED BY
COLLEEN BROWN,

PAY TO THE ORDER OF
COUNTRYWIDE HOME LOANS, INC.

WITHOUT RECOURSE
FULL SPECTRUM LENDING, INC.

BY
Rebecca Fendel
TITLE: BRANCH MANAGER

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC.

BY
ANDREW SALE
ASST SECRETARY

FHA/CONV
Concurrent Funding/Allonge to Note
1C2511US (01/94)

*001857563000001C251*

JS 44A
(Rev. 2/85)
Chicago

**CIVIL COVER SHEET**

**01 C 50017**

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I (a) PLAINTIFFS**

FILED-WD

*BANK OF NEW YORK* DV JAN 16 PM 1:36 *CWABS 2000-2*

CLERK
U.S. DISTRICT COURT

**DEFENDANTS**

*COLLEEN BROWN ET AL*

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF *CALIFORNIA*
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT *DEKALB*
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

PIERCE AND ASSOCIATES
SUITE 1200
18 SOUTH MICHIGAN
CHICAGO, IL 60603
(312) 346-9088

ATTORNEYS (IF KNOWN)

**II. BASIS OF JURISDICTION** (PLACE AN x IN ONE BOX ONLY)

- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☒ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY.)

*FORECLOSURE OF MORTGAGE - SUIT BETWEEN CITIZENS OF DIFFERENT STATES 28 USC 1332 (a)(1)*

DOCKETED
JAN 1 8 2000

**V. NATURE OF SUIT** (PLACE AN x IN ONE BOX ONLY)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐110 Insurance | PERSONAL INJURY | PERSONAL INJURY | ☐610 Agriculture | ☐422 Appeal 28 USC 158 | ☐400 State Reapportionment |
| ☐120 Marine | ☐310 Airplane | ☐362 Personal Injury— Med Malpractice | ☐620 Food & Drug | ☐423 Withdrawal 28 USC 157 | ☐410 Antitrust |
| ☐130 Miller Act | ☐315 Airplane Product Liability | ☐365 Personal Injury Product Liability | ☐630 Liquor Laws | | ☐430 Banks and Banking |
| ☐140 Negotiable Instrument | ☐320 Assault, Libel & Slander | ☐368 Asbestos Personal Injury Product Liability | ☐640 R.R. & Truck | PROPERTY RIGHTS | ☐450 Commerce/ICC Rates/etc. |
| ☐150 Recovery of Overpayment & Enforcement of Judgment | ☐330 Federal Employers' Liability | | ☐650 Airline Regs | ☐820 Copyrights | ☐460 Deportation |
| ☐151 Medicare Act | ☐340 Marine | PERSONAL INJURY | ☐660 Occupational Safety/Health | ☐830 Patent | ☐810 Selective Service |
| ☐152 Recovery of Defaulted Student Loans (Excl Veterans) | ☐345 Marine Product Liability | ☐370 Other Fraud | ☐690 Other | ☐840 Trademark | ☐850 Securities/Commodities/ Exchange |
| ☐153 Recovery of Overpayment of Veteran's Benefits | ☐350 Motor Vehicle | ☐371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐891 Agricultural Acts |
| ☐160 Stockholders' Suits | ☐355 Motor Vehicle Product Liability | ☐380 Other Personal Property Damage | ☐710 Fair Labor Standards Act | ☐861 HIA (1395ff) | ☐892 Economic Stabilization Act |
| ☐190 Other Contract | ☐360 Other Personal Injury | ☐385 Property Damage Product Liability | ☐720 Labor/Mgmt. Relations | ☐862 Black Lung (923) | ☐893 Environmental Matters |
| ☐195 Contract Product Liability | | | ☐730 Labor/Mgmt. Reporting & Disclosure Act | ☐863 DIWC (405(g)) | ☐894 Energy Allocation Act |
| REAL PROPERTY | CIVIL RIGHTS | PRISONER PETITIONS | ☐740 Railway Labor Act | ☐863 DIWW (405(g)) ☐864 SSID Title XVI | ☐895 Freedom of Information Act |
| ☐210 Land Condemnation | ☐441 Voting | ☐510 Motions to Vacate Sentence 28 USC 2255 | ☐790 Other Labor Litigation | ☐865 RSI (405(g)) | ☐900 Appeal of Fee Determination Under Equal Access to Justice |
| ☒220 Foreclosure | ☐442 Employment | | | FEDERAL TAX SUITS | |
| ☐230 Rent Lease & Ejectment | ☐443 Accommodations | ☐530 Habeas Corpus | ☐791 Empl. Ret. Inc. Security Act | ☐870 Taxes | ☐950 Constitutionality of State Statutes |
| ☐240 Torts to Land | ☐444 Welfare | ☐540 Mandamus & Other | | ☐871 IRS-Third Party 26 USC 7609 | ☐890 Other Statutory Actions |
| ☐245 Tort Product Liability | ☐440 Other Civil Rights | ☐550 Civil Rights | | ☐875 Customer Challenge 12 USC 3410 | |
| ☐290 All Other Real Property | | | | | |

**VI. ORIGIN** (PLACE AN x IN ONE BOX ONLY)

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

**VII. REQUESTED IN COMPLAINT:**
CHECK IF THIS IS A CLASS ACTION
☐ UNDER F.R.C.P. 23

DEMAND $

Check YES only if demanded in complaint:
JURY DEMAND: ☐ YES ☒ NO

**VIII. REMARKS**
In response to General Rule 2.21D(4) this case:

☐ is not a refiling of a previously dismissed action.
☐ is a refiling of case number _____ of Judge _____

DATE *1/10/01*

SIGNATURE OF ATTORNEY OF RECORD *Amy B Pierce*

UNITED STATES DISTRICT COURT

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS

FILED-WD

01 JAN 16 PM 1:36

CLERK
U.S. DISTRICT COURT

In the Matter of

BANK OF NEW YORK, CWABS 2000-2
VS
COLLEEN BROWN; et al

Case Number: 01C50017

## APPEARANCES ARE HEREBY FILED BY THE UNDERSIGNED AS ATTORNEY(S) FOR:

BANK OF NEW YORK, CWABS 2000-2

| (A) | (B) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME DENIS B. PIERCE | NAME KIM M. CASEY |
| FIRM PIERCE & ASSOCIATES | FIRM HOLMSTROM & KENNEDY |
| STREET ADDRESS 18 S. Michigan Ave., Ste # 1200 | STREET ADDRESS 800 N. CHURCH ST. |
| CITY/STATE/ZIP CHGO, IL 60603 | CITY/STATE/ZIP ROCKFORD, IL 61105 |
| TELEPHONE NUMBER 312-346-9088 | TELEPHONE NUMBER 815-962-7071 |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 02205173 | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) 06181726 |
| MEMBER OF TRIAL BAR? YES ☐ NO ☒ | MEMBER OF TRIAL BAR? YES ☒ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☒ | TRIAL ATTORNEY? YES ☒ NO ☐ |
| | DESIGNATED AS LOCAL COUNSEL? YES ☒ NO ☐ |

| (C) | (D) |
|---|---|
| SIGNATURE | SIGNATURE |
| NAME | NAME |
| FIRM | FIRM |
| STREET ADDRESS | STREET ADDRESS |
| CITY/STATE/ZIP | CITY/STATE/ZIP |
| TELEPHONE NUMBER | TELEPHONE NUMBER |
| IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) | IDENTIFICATION NUMBER (SEE ITEM 4 ON REVERSE) |
| MEMBER OF TRIAL BAR? YES ☐ NO ☐ | MEMBER OF TRIAL BAR? YES ☐ NO ☐ |
| TRIAL ATTORNEY? YES ☐ NO ☐ | TRIAL ATTORNEY? YES ☐ NO ☐ |
| DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ | DESIGNATED AS LOCAL COUNSEL? YES ☐ NO ☐ |

DOCKETED
JAN 1 8 2000

## PLEASE COMPLETE IN ACCORDANCE WITH INSTRUCTIONS ON REVERSE.